

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 17, 2025

**BY EMAIL & ECF**
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *United States v. Jamaal Wade*, 25 Cr. 290 (PKC)

Dear Judge Castel:

The Government respectfully submits this letter in advance of the September 17, 2025 sentencing of Jamaal Wade.[1]

### 1.  The Offense Conduct

Wade trafficked in barbaric child pornography. He first came to the FBI's attention when it seized a phone belonging to an individual ("CC-1") with whom Wade had shared child pornography. (PSR ¶ 10.) A review of CC-1's phone revealed that Wade sent CC-1 multiple videos containing child pornography. When an FBI undercover employee took over CC-1's Telegram account and struck up a conversation with Wade, Wade sent the undercover employee more child pornography. When the undercover agent asked Wade how old the child in one video was, Wade responded "11 or 12." (PSR ¶¶ 14–15.)

On April 7, 2024, Wade was arrested by the FBI onboard the cruise ship where Wade was working at the time. A search of Wade's phone revealed hundreds more pictures and videos containing child pornography. Altogether, Wade possessed at least 775 unique files containing child pornography, including 148 videos. Around 40 of the files depicted infants or toddlers, some as young as a few months old. Wade exchanged child pornography with approximately 65 individuals for a period of years. (PSR ¶ 17.)

Wade sent and discussed some of these videos while onboard a family cruise ship where he worked. (PSR ¶ 16.) Wade's child pornography depicted, among other things, horrific abuse

---

[1] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

1

of young children. One showed an adult beating and raping a 10-year-old who was bound to a chair. Another showed the rape of a baby. (PSR ¶ 17.)

### 2. Criminal History

Wade has a 2020 Michigan conviction for stalking a minor. The underlying conduct occurred while Wade—who was at the time 23 years old—was touring with a musical production in Detroit. Wade was sitting on a bed, watching a movie with an 11-year-old minor who was a member of the cast. Wade started touching the minor under the blanket and rubbed the victim's genitals. The victim's adult sibling, who was traveling with the victim, was in the room but did not see the incident. Wade later texted the victim and asked the victim not to tell anyone. The minor alerted a parent and Wade was arrested by the Detroit Police Department. (PSR ¶ 43.)

As a result of that conduct, Wade was originally charged with criminal sexual conduct in the second degree, in violation of Mich. Penal Code § 750.520c, a sex offense. He pled it down to stalking a minor, in violation of Michigan Penal Code § 750.411h(2)(b), which did not require sex-offender registration. He was sentenced to three years' probation and was thus on probation during some of the offense conduct in this case.





### 4. The Plea and Guidelines Calculation

On June 25, 2025, pursuant to a plea agreement, Wade pleaded guilty to Count One of the Information, which charges him with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). In the plea agreement, the parties stipulated to a Guidelines range of 97 to 121 months' imprisonment. The Probation Office calculated the same applicable Guidelines range and recommends a sentence of four years' imprisonment. (PSR ¶ 94 & p. 26.)

### 5. Applicable Law

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a court must proceed to consider seven factors outlined in 18 U.S.C. § 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range

itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. The relevance of the Guidelines throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### 6. A Sentence of Imprisonment is Appropriate in this Case

While there are significant mitigating circumstances here, the starting point must be the seriousness of Wade's conduct. He trafficked in ghastly child pornography depicting the violent rape of young children. He did so after having incurred a conviction for molesting an 11-year-old minor. And, as discussed below, his journals reveal that he had sex at least once with a 16-year-old minor. This conduct calls for a serious sentence. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The Government believes that a significant term of imprisonment of at least five years, but below the applicable Guidelines range, is therefore appropriate in this case. Below, the Government sets forth the aggravating and mitigating circumstances present in this case.

4

### A. Aggravating Factors

***Wade trafficked significant amounts of child pornography.*** Wade was a prolific trafficker of child pornography, including photos and videos showing the violent rape of young children. He shared those materials with around 65 other people, ensuring that these materials will continue to be circulated to an ever-wider audience. Every time those images are shared, the children depicted in those images (some of whom are now adults) are revictimized.[3]

The pseudonymous victim impact statements submitted in this case speak of the crushing trauma that Wade's victims carry with them because of the trafficking of their images. One victim,



(Ex. A.)

The parent of another victim,



Thus, although Wade did not participate in making the images, it is hard to imagine that such images would exist without the demand for their production created by people, like the defendant, who seek to possess them. This conduct calls for significant punishment. It also calls for a significant sentence to send a message to other would-be offenders—like the scores of people

---

[3] Attached to this submission as Exhibits A–H are the victim impact statements the Government has received from the identifiable victims in this case. In order to protect the privacy of the victims, the Government respectfully requests that the exhibits be filed under seal.

with whom Wade shared child pornography—that such conduct will be met with serious consequences.

***Wade committed hands-on offenses on at least two occasions, including after having been arrested for hands-on conduct.*** Importantly, Wade's conduct was not limited to a keyboard and screen. Only a few years ago, he crossed the line into becoming a hands-on offender by physically molesting an 11-year-old child. Wade got a significant break after his arrest: Instead of having to incur a sex-offense conviction, he accepted a plea offer that only required him to plead to a stalking offense, which did not come with any sex offender registration requirements.[4] He also received no prison time. Wade could have used that brush with prison as a wakeup call. He could have used that experience to motivate him to turn away from this conduct. He did not. Instead, he doubled down by amassing and sharing vast amounts of child pornography and by having sex with at least one other minor. Wade recorded this encounter in his handwritten journal: "I allowed myself to join one of [a coconspirator]'s sex parties and got fucked by a 16 [year old] who willingly was involved." Worse yet, Wade committed these acts while he was on probation for his stalking conviction.[5] Because Wade was not deterred by the prior non-custodial sentence, a significant term of incarceration is necessary to protect the public and to deter Wade from future crimes against children.

### B. Mitigating factors.

Without diminishing the seriousness of Wade's conduct, this case also presents significant mitigating factors:



---

[4] Had Wade incurred a sex offense as a result of the Detroit conduct, he may have faced a 10-year mandatory minimum for the instant federal offense. *See* 18 U.S.C. § 2252A(b)(2).

[5] In addition to this conduct, Wade admitted to previously filming a minor in a bathroom and filming a college-age student in the shower. (PSR ¶¶ 81, 111.)

███████████████████████████████████████

*Pre-arrest journals*. Wade's handwritten journals, which were seized during his arrest, show that he struggled with his child-pornography-related urges and earnestly tried to kick the habit:

> Lately been going back and forth with perving. Speaking w/ [a coconspirator] who is an enabler and a proud pedophile with videos and acts fully on it with younger guys. My flesh thinks it's hot but my mind knows it completely wrong. I am going to move out and cut ties. It's too much for me at this time. I allowed myself to join one of his sex parties and got fucked by a 16 [year old] who willingly was involved. I had a good time but had to be realistic and let him know to love himself and to not allow horny predators to do things. He reminded me so much of myself. I could see the hurt and confusion in his eyes masked by the lust.

Other journal entries spoke of his seeking treatment to address his affliction. These pre-arrest writings suggest that Wade's current expressions of remorse are genuine, and that, with the assistance of the Probation Office and the programs offered during supervised release, he could return to being a productive member of society.

███████████████████████████████████████ Those factors do not, however, justify a time-served sentence given the seriousness of the conduct, the need to protect the community, and the need to deter Wade from future criminal conduct.

### 7. The JVTA Assessment

The statutory authority to impose the additional $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act ("JVTA") expired on September 30, 2025. *See* 18 U.S.C. § 3014(a) ("Beginning on the date of enactment of the [JVTA] of 2015 and ending on September 30, 2025 . . . ."). The Government therefore respectfully requests that the Court decline to impose the additional JVTA special assessment at sentencing.

### 8. Restitution

The Government has received several restitution requests to date from child-pornography victims and respectfully requests 90 days to submit a proposed restitution order, in order to allow additional victims, if any, to send restitution requests.

**9. Conclusion**

The Government believes that a significant term of imprisonment of at least five years, but below the applicable Guidelines range, is therefore appropriate in this case.[6]

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
Getzel Berger
Assistant United States Attorney
(212) 637-1061

cc:     Mark Gombiner, Esq. (by ECF)

---

[6] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).